UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SEBASTIEN C. FLAHAUT, | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:22-CV-372-TLS |
| CARL E. KUENZLI and NOE MARANDET, | |
| Defendants. | |

**OPINION AND ORDER**

Sebastien C. Flahaut, a prisoner without a lawyer, is proceeding in this case "against Dr. Carl Kuenzli and Dr. Noe Marandet in their personal capacity for money damages for denying him needed medical care following surgery on his elbow in April 2020 in violation of the Eighth Amendment." ECF No. 8 at 6. This matter is now before the Court on the Defendants' Motion for Summary Judgment [ECF No. 76], which is fully briefed and ripe for ruling.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of [her] case on which [she] bears the burden of proof; if [she] fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## MATERIAL FACTS

The Defendants provide affidavits and the Plaintiff's medical records, which show the following facts.[1] In late 2019, the Plaintiff fell at the Miami Correctional Facility ("MCF") and sustained a fractured elbow and a tear to his triceps. ECF No. 79-1 at 1. On February 3, 2020, he was referred to an orthopedic specialist who recommended surgical repair. *Id.* On February 5, 2020, Dr. Marandet submitted an off-site patient request for the Plaintiff to receive surgical repair, which was approved. *Id.* at 2; ECF No. 79-4 at 73–75.

On March 18, 2020, the Plaintiff had surgical correction of his fractured elbow and triceps tear. ECF No. 79-1 at 2. Afterwards, he returned to MCF and was admitted to the institutional infirmary. *Id.*; ECF No. 79-4 at 67–69.

On March 19, 2020, Dr. Kuenzli saw the Plaintiff for a follow-up appointment. ECF No. 79-2 at 2; ECF No. 79-4 at 65–66. Dr. Kuenzli instructed the Plaintiff regarding limiting his activity and ensured he had current prescriptions for pain medication, namely Norco, ketorolac, and acetaminophen. ECF No. 79-2 at 2; ECF No. 79-4 at 66.

---

[1] Because the Plaintiff does not dispute this evidence, the Court accepts it as undisputed.

2

On March 24, 2020, Dr. Marandet submitted an off-site patient request for the Plaintiff to receive a follow-up appointment with his surgeon, which had been requested by the surgeon. ECF No. 79-1 at 2; ECF No. 79-4 at 62–64. The request was approved. ECF No. 79-1 at 2.

On March 25, 2020, the Plaintiff was discharged from the institutional infirmary because it was determined he was "able to be followed in general population." ECF No. 79-2 at 2; ECF No. 79-4 at 61. He was returned to his cellhouse with his elbow in a splint and brace and prescribed Tylenol-Codeine #3 ("Tylenol #3"), a narcotic pain medication. ECF No. 79-4 at 61. He was scheduled for a follow-up appointment in the institutional infirmary in seven days, and it was noted he was awaiting a follow-up appointment with his orthopedic surgeon. *Id.*

On April 4, 2020, Dr. Marandet saw the Plaintiff for an assessment after nursing staff reported he had a potential infection in his arm. ECF No. 79-1 at 2; ECF No. 79-4 at 58–60. Upon assessment, Dr. Marandet noted the Plaintiff had some joint pain and drainage consistent with a potential infection. ECF No. 79-1 at 2. Dr. Marandet ordered that he continue to receive Tylenol #3 for pain as well as IV Cleocin to address any underlying infection. *Id.* He also ordered a wound culture and admitted the Plaintiff back into the institutional infirmary for continued IV antibiotic treatment and management of the infection while awaiting his surgical follow-up appointment. *Id.*; ECF No. 79-4 at 58.

On April 6, 2020, Dr. Marandet saw the Plaintiff for a follow-up assessment and examined his elbow. ECF No. 79-1 at 2–3; ECF No. 79-4 at 54–55. The swelling had improved with the IV antibiotic. ECF No. 79-1 at 2. Half his wound staples were removed during this visit, and the rest were removed the following day. *Id.* at 2–3. The Plaintiff continued to have orders for Tylenol #3 for pain as well as IV Cleocin to continue treating the infection. *Id.* at 3.

3

On April 7, 2020, Dr. Kuenzli assessed the Plaintiff, noted there was some redness and drainage around the surgical incision, and issued an order that he continue to receive IV antibiotics and Tylenol #3 for pain. ECF No. 79-2 at 3; ECF No. 79-4 at 52–53.

On April 8, 2020, the Plaintiff had a follow-up appointment with his orthopedic surgeon. ECF No. 79-1 at 3; ECF No. 79-4 at 50. The next day, the Plaintiff informed Dr. Marandet the surgeon wanted to schedule another follow-up appointment and the plan was to open the wound for debridement if there was no improvement. ECF No. 79-1 at 3.

On April 10, 2020, Dr. Marandet discharged the Plaintiff from the institutional infirmary and returned him to his cellhouse after receiving a report from the nurses that the Plaintiff was engaging in inappropriate, threatening, and disruptive behavior. ECF No. 79-1 at 3; ECF No. 79-4 at 49. Dr. Marandet ordered that the Plaintiff continue to receive the IV treatment as an outpatient. ECF No. 79-1 at 3; ECF No. 79-4 at 49.

On April 13, 2020, Dr. Kuenzli examined the Plaintiff and noted the wound was still leaking and he could see a portion of the surgical hardware, which was abnormal. ECF No. 79-2 at 3; ECF No. 79-4 at 40. Dr. Kuenzli noted the infection had improved, but given the potential abnormality of the elbow he ordered that the Plaintiff continue to receive antibiotics and noted he needed to follow-up with his surgeon to assess and address any abnormality with the hardware. ECF No. 79-2 at 3–4; ECF No. 79-4 at 40–41.

On April 13, 2020, Flahaut removed his IV on his own, against medical device. ECF No. 79-1 at 3; ECF No. 79-4 at 42–43. He also repeatedly shut his IV off and on despite direction from nurses. ECF No. 79-1 at 3; ECF No. 79-4 at 42–43. On April 14, 2020, Dr. Marandet submitted an off-site patient request for the Plaintiff to receive a follow-up appointment with his orthopedic surgeon, which was approved. ECF No. 79-4 at 37–39.

4

The Plaintiff was scheduled to see his orthopedic surgeon on April 20, 2020. ECF No. 79-1 at 3. However, for reasons unknown to Dr. Marandet and Dr. Kuenzli, the Plaintiff was not sent out to see his surgeon on that date. *Id.*; ECF No. 79-2 at 4. Neither Defendant knows why the Plaintiff was not sent out for his April 20 appointment, but they are aware the facility had difficulties scheduling and transporting inmates for off-site medical appointments during that time because they were in the early stages of the COVID-19 pandemic. ECF No. 79-1 at 3; ECF No. 79-2 at 4. The Plaintiff was admitted back into the institutional infirmary for monitoring and treatment while awaiting a rescheduled appointment, and he continued to have orders for Tylenol #3 and oral antibiotics. ECF No. 79-1 at 4; ECF No. 79-2 at 4; ECF 79-4 at 35–36.

On April 22, 2020, a nurse practitioner submitted a request for the Plaintiff to receive a PICC placement. ECF No. 79-1 at 4; ECF No. 79-4 at 32. She noted he was waiting for a follow-up orthopedic appointment but now had an infection and a partial reopening of the incision site and may need IV therapy for a few weeks. ECF No. 79-1 at 4; ECF No. 79-4 at 33. Her request was approved. ECF No. 79-1 at 4; ECF No. 79-4 at 33.

On April 28, 2020, Dr. Kuenzli assessed the Plaintiff in the infirmary and noted he had drainage with exposed hardware from his surgery. ECF No. 79-2 at 5; ECF No. 79-4 at 28. He had a draining wound that was being cleaned twice per day, was receiving IV antibiotics, and Dr. Kuenzli still could see the outline of his surgical hardware. ECF No. 79-2 at 5; ECF No. 79-4 at 28. The Plaintiff was to continue receiving Tylenol #3 and IV Clindamycin, and Dr. Kuenzli noted medical staff were still trying to schedule him for a return appointment with his orthopedic specialist. ECF No. 79-2 at 5; ECF No. 79-4 at 28–29.

On May 5, 2020, Dr. Kuenzli saw the Plaintiff and found he was animated and upset. ECF No. 79-2 at 5; ECF No. 79-4 at 26–27. Dr. Kuenzli noted the Plaintiff had right elbow pain

5

with exposed hardware and an infection and was frustrated with the delay in his orthopedic appointment. ECF No. 79-2 at 5; ECF No. 79-4 at 26. Dr. Kuenzli noted medical staff were still working to get this appointment rescheduled, ordered a complete set of labs, and ordered that the Plaintiff remain on IV antibiotics. ECF No. 79-2 at 5. Later that day, the Plaintiff was involved in an altercation with custody staff in the infirmary where he was sprayed with OC spray and taken to restricted housing. *Id.*; ECF No. 79-4 at 23–25. It is unclear how long the Plaintiff was kept in restricted housing, but it appears he was back in the institutional infirmary the next day. ECF No. 79-4 at 21.

On May 6, 2020, a nurse contacted Dr. Marandet and informed him the Plaintiff had exhibited threatening and dangerous behavior while she had been attempting to administer his IV antibiotics. ECF No. 79-1 at 4; ECF No. 79-4 at 21–22. Because the nurse told Dr. Marandet she did not feel safe administering the IV antibiotic, Dr. Marandet told her she could withhold the administration if needed due to safety concerns with the Plaintiff's behavior. ECF No. 79-1 at 4; ECF No. 79-4 at 21. The nurse then discussed the issue with the Director of Nursing, who agreed to withhold the antibiotic until she spoke "with provider and HSA." ECF No. 79-1 at 4; ECF No. 79-4 at 21.

On May 12, 2020, Dr. Kuenzli saw the Plaintiff and noted he still had an infection to the right elbow with exposed hardware. ECF No. 79-2 at 5; ECF No. 79-4 at 19. The plan remained to continue wound treatment, continue receiving Vancomycin, and get the Plaintiff back off-site to see his surgeon as soon as it could be arranged. ECF No. 79-2 at 6; ECF No. 79-4 at 19.

On May 14, 2020, Dr. Marandet discharged the Plaintiff from the institutional infirmary once again due to his aggressive, uncooperative, and violent behavior. ECF No. 79-1 at 4; ECF No. 79-4 at 18. There had been many days in a row in which nursing staff had difficulty

6

administering medication or interacting with the Plaintiff, and it was impacting the ability of medical staff to provide care. ECF No. 79-1 at 4. Dr. Marandet changed the Plaintiff's order from IV antibiotics to oral antibiotics, which he hoped could be administered with less problematic interactions between the Plaintiff and the nursing staff. *Id.* at 5.

On May 20, 2020, Dr. Marandet saw the Plaintiff for a follow-up appointment and noted he continued to have signs of infection but the drainage was minimal and his surgical hardware was exposed. ECF No. 79-1 at 5; ECF No. 79-4 at 17. Dr. Marandet ordered that the Plaintiff continue to receive oral antibiotics for the next 10 days, and noted the plan was to get the Plaintiff to see his orthopedic specialist as soon as could be scheduled. ECF No. 79-1 at 5; ECF No. 79-4 at 17.

On June 2, 2020, Dr. Marandet was contacted by nursing staff after the Plaintiff reported he was in an altercation with another inmate and had been stabbed and knocked out. ECF No. 79-1 at 5; ECF No. 79-4 at 14–16. Dr. Marandet ordered that the Plaintiff receive Clindamycin for the next 10 days and continued an order for daily dressing changes. ECF No. 79-1 at 5; ECF No. 79-4 at 16.

On June 16, 2020, the Plaintiff was seen off-site by Dr. Carl Shively and had surgery to remove hardware from his right elbow and debride tissue from the right elbow wound. ECF No. 79-1 at 5. On June 19, 2020, the Plaintiff returned to the prison and was readmitted to the institutional infirmary. *Id.*; ECF No. 79-4 at 12–13. The Plaintiff returned with a prescription from Dr. Shively for Oxycodone, but Dr. Marandet ordered he receive Tylenol #3 instead of Oxycodone, along with Ibuprofen, Bactrim, Tylenol, and bandage changes. *Id.* at 5–6; ECF No. 79-4 at 12. Dr. Marandet made the decision to provide Tylenol #3 as opposed to Oxycodone because: (1) Tylenol #3 was stocked at the facility and easier to provide; (2) Tylenol #3 is a

7

controlled narcotic pain medication and the functional equivalent of Oxycodone; and (3) Tylenol #3 has less concerns for potential abuse and addiction, especially for patients with a history of substance abuse like the Plaintiff. ECF No. 79-1 at 6. The Plaintiff was upset with this decision, yelled obscenities at nursing staff, and refused to allow a nurse to complete the infirmary intake assessment. *Id.*; ECF No. 79-4 at 12.

On June 29, 2020, Dr. Kuenzli saw the Plaintiff and noted he had a right-elbow operation pad in place that was wrapped with no swelling or redness and sutures intact. ECF No. 79-2 at 6–7; ECF No. 79-4 at 10–11. Dr. Kuenzli ordered that the Plaintiff continue receiving his antibiotic and be scheduled for a follow-up appointment with his surgeon. ECF No. 79-2 at 6–7; ECF No. 79-4 at 10–11.

On June 30, 2020, Dr. Marandet submitted a request for the Plaintiff to receive a follow-up with his orthopedic surgeon, which was approved. ECF No. 79-1 at 6; ECF No. 79-4 at 7–9. On August 6, 2020, the Plaintiff had a follow-up with his surgeon and upon return was provided the antibiotic Cephalexin. ECF No. 79-1 at 6; ECF No. 79-4 at 3–4. On September 3, 2020, Dr. Kuenzli saw the Plaintiff and noted his right elbow wound was closing and still appeared clean and healing. ECF No. 79-2 at 7; ECF No. 79-4 at 1–2. Over the next few months, the Plaintiff continued to receive regular medical treatment and intervention, including imaging, physical therapy, medications, and assessments. ECF No. 79-1 at 6; ECF No. 79-2 at 7.

## ANALYSIS

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The

parties agree that the Plaintiff had an objectively serious medical need. "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee County*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (explaining that deliberate indifference claims fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

For a medical professional to be held "liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (cleaned up). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697–98 (cleaned up). "In the inadequate medical care context, deliberate indifference does not equate to medical malpractice; the Eighth Amendment does not codify common law torts." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (cleaned up); *see also Johnson v.*

*Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[I]t is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference.").

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (citations omitted). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Here, it is undisputed the Defendants continuously provided the Plaintiff medical care following his elbow surgery by monitoring his condition, admitting him to the infirmary on various occasions, providing pain medications, administering antibiotics for his infections, performing wound cultures and dressing changes, and scheduling him for follow-up appointments with his orthopedic surgeon. Thus, because it is undisputed the Defendants provided some level of care for the Plaintiff following his elbow surgery, the Plaintiff can only survive summary judgment by showing the treatment provided by the Defendants was "plainly inappropriate." *Hayes*, 546 F.3d at 524. The Plaintiff raises numerous arguments in this regard.

First, the Plaintiff argues that the Defendants denied him constitutionally adequate treatment because he was injured in November 2019 but was not referred for an orthopedic assessment until February 3, 2020. ECF No. 88 at 2. But this allegation falls outside the scope of this lawsuit. Specifically, the Plaintiff did not allege in his Complaint that the Defendants

rendered constitutionally inadequate medical care *before* his elbow surgery and was therefore only granted leave to proceed against the Defendants "for denying him needed medical care *following surgery on his elbow* in April 2020[.]" ECF No. 8 at 6 (emphasis added). Any allegation that the Defendants rendered constitutionally inadequate medical care before his elbow surgery, therefore, falls outside the scope of this lawsuit.

Second, the Plaintiff argues Dr. Marandet denied him adequate treatment for his hepatitis C between March 2020 and October 2021. ECF No. 88 at 3. Again, the Plaintiff did not include these allegations in his Complaint, and they are outside the scope of this lawsuit. The Plaintiff provides no evidence the treatment he received for his hepatitis C was in any way connected to the treatment he received for his elbow surgery.

Third, the Plaintiff argues that following his March 18, 2020 surgery, the surgeon prescribed him Norco to be taken every four hours, but the nurses at MCF only dispensed him the medication every six hours. ECF No. 88 at 4. The Plaintiff provides no evidence that his surgeon prescribed him Norco to be taken every four hours or that the Defendants were aware of this alleged discrepancy. Regardless, the mere fact that the Plaintiff's surgeon believed he needed Norco every four hours does not show the Defendants were deliberately indifferent for prescribing the medication every six hours. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim."). It is undisputed that Dr. Kuenzli prescribed the Plaintiff acetaminophen, ketorolac, and Norco following his surgery, and the Plaintiff provides no evidence it was "plainly inappropriate" for him to do so.

Fourth, the Plaintiff argues the Defendants ignored the instructions in his discharge forms to contact the surgeon immediately if he showed any signs of an infection. ECF No. 88 at 4–5.

11

But it is undisputed the Defendants treated the Plaintiff's infections by admitting him to the institutional infirmary, administering IV and oral antibiotics, and submitting requests for him to be scheduled for follow-up appointments with his orthopedic specialist. The Plaintiff provides no evidence the treatment the Defendants provided for his infections was plainly inappropriate.

Fifth, the Plaintiff argues he was supposed to have a follow-up appointment with his orthopedic surgeon to have his staples removed on April 1, 2020, but the appointment was not timely scheduled so he had to wait an extra week to have his staples removed. ECF No. 88 at 5. But it is undisputed Dr. Marandet submitted an off-site patient request for the Plaintiff to receive a follow-up appointment with his surgeon on March 24, 2020, and there is no evidence Dr. Marandet or Dr. Kuenzli was responsible for any delay in approving or scheduling that appointment.

Sixth, the Plaintiff argues the Defendants denied him constitutionally adequate care by discharging him from the institutional infirmary on March 25, 2020, which caused him to be moved to a dirty cell where he contracted an infection. ECF No. 88 at 6–7. It is undisputed the Plaintiff was discharged from the institutional infirmary on March 25 because it was determined he was "able to be followed in general population" and was returned to his cellhouse with his elbow in a splint and brace and an order for Tylenol #3. ECF No. 79-4 at 61. It is also undisputed that, once he began exhibiting signs of an infection on April 4, he was readmitted him to the institutional infirmary, prescribed IV Cleocin to address the infection, and ordered a wound culture. While it is unfortunate the Plaintiff contracted an infection, he provides no evidence the Defendants violated any standard of care by discharging him from the institutional infirmary on March 25. And it is undisputed they readmitted him to the institutional infirmary and provided constitutionally adequate care once he began exhibiting signs of an infection. Thus, there is no

evidence it was "plainly inappropriate" for the Defendants to discharge the Plaintiff from the institutional infirmary on March 25.

Seventh, Flahaut argues the Defendants denied him constitutionally adequate care by unnecessarily delaying his April 20, 2020, follow-up appointment with his surgeon. ECF No. 88 at 7–8, 17–23. But it is undisputed Dr. Marandet timely submitted an off-site patient request for the Plaintiff to see his surgeon on April 14, 2020, and there is no evidence either Defendant was responsible for delaying this appointment. Both Defendants attest they do not know why this appointment was rescheduled but that it was likely due to the start of the COVID-19 pandemic. Moreover, it is undisputed the Defendants continued treating the Plaintiff while he was waiting for this appointment to be rescheduled by readmitting him to the institutional infirmary and providing antibiotics and pain medication. Based on the evidence in the record, there is no basis to conclude the Defendants violated the Plaintiff's Eighth Amendment rights by unnecessarily delaying his April 20 follow-up appointment with his surgeon.

Eighth, the Plaintiff argues Dr. Marandet denied him constitutionally adequate care by discharging him from the infirmary on April 10, 2020, and May 14, 2020, while his wound still was recovering from an infection. ECF No. 88 at 8–10, 21. But it is undisputed Dr. Marandet discharged the Plaintiff on April 10 after receiving reports from nurses that he had engaged in inappropriate, threatening, and disruptive behavior, and discharged him on May 14 due to reports he had been aggressive, violent, and uncooperative such that he had impacted the ability of medical staff to provide care for many days in a row. ECF No. 79-1 at 3–5; ECF No. 79-4 at 18, 49. On both occasions, the Plaintiff continued to receive antibiotics as an outpatient. *Id.* The Plaintiff disputes that he threatened nursing staff, ECF No. 88 at 9, but he does not dispute Dr. Marandet received reports from nursing staff detailing the Plaintiff's disruptive behavior, ECF

13

No. 79-1 at 3–5; ECF No. 79-4 at 49. There is no evidence Dr. Marandet had any reason to doubt the veracity of the nurses' reports, and he was within his discretion to discharge the Plaintiff from the institutional infirmary and continue providing outpatient treatment based on these reports.

Ninth, the Plaintiff argues the Defendants denied him constitutionally adequate medical care by providing him Tylenol #3 instead of Norco or Oxycodone, which had been prescribed by Dr. Shively. ECF No. 88 at 13–17, 24–25. Dr. Marandet attests he decided to prescribe Tylenol #3 instead of Oxycodone because it was easier to provide, was the functional equivalent of Oxycodone, and had less concerns for potential abuse and addiction. ECF No. 79-1 at 6. Dr. Marandet also attests the Plaintiff had a history of substance abuse and drug addiction, which the Plaintiff does not dispute. *Id.* at 1, 6. The Plaintiff's disagreement with Dr. Marandet's decision to provide Tylenol #3 rather than Oxycodone does not show deliberate indifference. *See Ciarpaglini*, 352 F.3d at 331 (recognizing that a mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation). Nor does the fact that Dr. Shively prescribed Oxycodone show it was deliberately indifferent for Dr. Marandet to provide Tylenol #3 instead, particularly where there is no evidence Dr. Shively knew of the Plaintiff's history of drug addiction. *See Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim."). Thus, there is no evidence it was "plainly inappropriate" for Dr. Marandet to prescribe the Plaintiff Tylenol #3 instead of Norco or Oxycodone.

Lastly, the Plaintiff argues Dr. Marandet denied him constitutionally adequate care by allowing the nurse to not administer his antibiotic on May 6, 2020. ECF No. 88 at 21. It is undisputed the nurse informed Dr. Marandet she did not feel safe administering the antibiotic at

that time because the Plaintiff was exhibiting threatening and dangerous behavior. ECF No. 79-4 at 21. The Plaintiff disputes that he exhibited threatening and dangerous behavior but does not dispute that the nurse reported that behavior to Dr. Marandet, and there is no evidence Dr. Marandet had any reason to doubt the veracity of the nurse's report. It is undisputed the nurse discussed the issue with the Director of Nursing, who agreed to withhold the antibiotic until she discussed the issue "with provider and HSA." ECF No. 79-4 at 21–22. Based on the evidence in the record, no reasonable jury could conclude it was "plainly inappropriate" for Dr. Marandet to authorize the nurse to withhold administering the Plaintiff's antibiotic until her safety concerns could be discussed with other medical staff.

Accordingly, it is undisputed the Defendants continuously provided the Plaintiff medical care following his elbow surgery by monitoring his condition, admitting and readmitting him to the infirmary, providing pain medications, administering antibiotics, performing wound cultures and dressing changes, and scheduling him for follow-up appointments with his orthopedic surgeon. In his response, the Plaintiff provides no evidence the treatment provided by the Defendants was "plainly inappropriate" or in any way constitutionally inadequate. Therefore, based on the evidence in the record, no reasonable jury could conclude the Defendants violated the Plaintiff's Eighth Amendment rights. Summary judgment is warranted in their favor.

## CONCLUSION

For these reasons, the Court:

(1) GRANTS the Plaintiff's Motion for the Court to Accept My Response to Defendant's Motion for Summary Judgment and Plaintiff's Brief Response & Affirmation to My Responses [ECF No. 92];

(2) GRANTS the Defendants' Motion for Summary Judgment [ECF No. 76]; and

(3) DIRECTS the Clerk of Court to enter judgment in favor of Defendants Dr. Carl Kuenzli and Dr. Noe Marandet and against Plaintiff Sebastien C. Flahaut and to close this case. The Plaintiff takes nothing by his Complaint.

SO ORDERED on February 25, 2025.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
FUNITED STATES DISTRICT COURT
